## THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR LAKE COUNTY, FLORIDA

MARK WRIGHT-AHERN

                Plaintiff,

v.

CITY OF CLERMONT

                Defendant.

_____/

CASE NO.:

DIV:

## COMPLAINT

**COMES NOW**, Plaintiff MARK WRIGHT-AHERN, (hereinafter "Plaintiff') by and through his undersigned attorney hereby sues Defendant CITY OF CLERMONT, is a municipal corporation established by virtue of the existing laws of the State of Florida, (hereinafter "Defendant"), and says:

## JURISDICTION AND VENUE

1.      This is an action for damages and other relief based on unlawful employment practices committed by Defendant and jurisdiction of this Court is invoked pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and the Florida Civil Rights Act of 1992, Florida Statutes,§ 760, et seq. ("FCRA"); to redress injury done to Plaintiff by the Defendant for discriminatory treatment on the basis of sexual orientation and race as well as retaliation based on that discrimination, and The Florida Civil Rights Act ("FCRA"), §§ 760.01-760.11.

2.      This Court has jurisdiction of the claims herein pursuant to the FCRA and concurrent jurisdiction with United States District Courts to adjudicate federal claims and supplemental jurisdiction over the Florida State claims.

3. The claims asserted in this Complaint arose in Clermont, Florida during the course of Plaintiff's employment with Defendant.

4. Venue is proper in this Court since Plaintiff was employed by Defendant in Clermont, Florida.

5. Plaintiff at all times pertinent to this complaint resided within Clermont, Florida.

6. Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA.

7. Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination ("Charge") against the Defendant with the Equal Employment Opportunity Commission.

8. That under a work sharing agreement between the EEOC and the FCHR, a charge with the EEOC is considered dual filed with the FCHR. Similarly, a charge filed with the FCHR or a local agency within the State of Florida is considered dual filed with the EEOC.

9. Plaintiff's Charge was filed on or about September 19, 2023. The actions complained of herein occurred within 300 days thereof and/or continued from that date stemming from the same actions set forth in the Charge and said Charge is timely under Federal Law.

10. Plaintiff's Charge was filed on or about September 19, 2023. The actions complained of herein occurred within 365 days thereof and/or continued from that date stemming from the same actions set forth in the Charge and said Charge is timely under State Law.

11.     Plaintiff was constructively terminated and actually terminated from his position on August 29, 2023. His Charge was therefore timely filed.

12.     Plaintiff was issued a Notice of Right to Sue letter on January 29, 2023.

13.     A Notice of Right to Sue satisfies conditions precedent under both Federal law and State law.

14.     This suit is filed in accordance with that Notice and within the applicable 90-day time limitation under Federal Law and the one-year time-period under State Law. See Woodham v. Blue Cross & Blue Shield of Fla., 829 So. 2d 891 (Fla. 2002).

15.     All other conditions precedent to this action have been performed or have been waived.

## PARTIES

16.     Plaintiff is over the age of eighteen.  Plaintiff is an African American and identifies as gay and/or a member of a protected class.

17.     At all relevant times, Plaintiff was African American and identified as gay community and/or a member of a protected class. He is therefore a member of a class protected under Title VII and the FRCA, because the terms, conditions, and privileges of his employment were altered because of his race and sexual orientation.

18.     Defendant was a "person" and/or an "employer" pursuant to Title VII and the FCRA since it employs fifteen (15) or more employees for the applicable statutory period; and it is subject to the employment discrimination provisions of the applicable statute.

19.     At all times material hereto Defendant CITY OF CLERMONT was an "employer" within the meaning of the FCRA.

20.     At all times material hereto, Plaintiff was an "employee" within the meaning of Title VII and the FCRA.

21.     Plaintiff is an African American, gay male and is a member of a class of persons protected from discrimination in his employment under Title VII and the FRCA.

22.     Defendant CITY OF CLERMONT is a municipal corporation established by virtue of the existing laws of the State of Florida.

## GENERAL ALLEGATIONS AND FACTS

23.     Plaintiff, an African American and gay male, was hired by Defendant on or about January 3, 2023, as a full-time employee with the City of Clermont.

24.     Plaintiff began his employment with Defendant as a Parks and Recreation Coordinator earning an estimate of $50,003.20 annually.

25.     Plaintiff possessed the necessary qualifications for his position with Defendant, the City of Clermont.

26.     Plaintiff was the only African American and gay male that worked in the Parks & Recreation Department and was under the direct supervision of Jennifer Stills (hereinafter "Ms. Stills") and Brian Forman (hereinafter "Mr. Forman"), who both are Caucasian and heterosexual.

27.     Upon Plaintiff's employment with the City of Clermont, Supervisor Jennifer Stills failed to provide proper training for Defendant's systems, strategies, and practices.

28.     Plaintiff often requested to shadow Ms. Stills for training purposes, but she declined stating that Plaintiff was not "ready," and declined Plaintiff training.

29.     Plaintiff was left to himself for self-training without the proper tools and procedures which affected his performance.

30.     Ms. Stills intentionally sabotaged Plaintiff's performance.

31.      Plaintiff was told that he could not sit in the office with Ms. Stills, although his

non-African American colleagues were allowed to do so.

32.     On or about February 2023, Plaintiff informed Ms. Stills that he felt left out

because he was not used for the purposes of his employment and did not receive proper

trianing. Ms. Stills ignored Plaintiff's concerns.

33.     On or about March 2023, Plaintiff was placed on splash pad duty for the first time

without any training on the operation of the splash pad. During Plaintiff's shift, the water

pump failed leading Plaintiff to reach out to Supervisor Jennifer Stills and his Caucasian

colleague, Heather News, for direction.

34.     The Caucasian employees accused Plaintiff of being "bossy" leading him to be

verbally reprimanded by his supervisor without giving him the opportunity to deny such

allegations.

35.     Additionally, Ms. Stills referred to Plaintiff as "skittles" on multiple occasions

referring to his sexual orientation.

36.     Ms. Stills told Plaintiff that she was so happy that Plaintiff was gay.

37.     On another occasion, Ms. Stills referred to Plaintiff as "trigger fingers"

throughout his employment with the City of Clermont.

38.     Plaintiff did not give Ms. Stills permission to refer to his sexual orientation or call

him any names outside of his legal name. The non-African American employees were not

called any names or referred by their sexual orientation.

39.     Approximately April 2023, Plaintiff asked Ms. Stills if she needed his assistance

before he left work. She replied, "don't you ever ask me again if I need help," leaving

Plaintiff offended and confused. Ms. Stills did not offer such treatment towards the non-African American and/or heterosexual employees.

40.     Ms. Stills invited all the non-African American employees on a bonding trip for work, but she intentionally did not invite Plaintiff to the trip.

41.      As Plaintiff began to hire vendors and talent, Ms. Stills constantly chastised Plaintiff about the drafting of the vendor contracts. Plaintiff requested training from Ms. Stills, but she declined and continued to criticize his work.

42.     Plaintiff reported his unfair treatment by Ms. Stills to the director, Brian Forman, but Plaintiff was told that they need to "learn how to get along like cats and dogs."

43.     Ms. Stills continued to nitpick Plaintiff's work, including his arrival time for work. Ms. Stills admonished Plaintiff for arriving two minutes past his work shift, although the workday did not require any urgency or events scheduled for the day. Ms. Stills give the same treatment to the non-African Americans and/or heterosexual employees when they arrived to work late.

44.     After Ms. Stills was notified of Mr. Wright-Ahern's report of her conduct to Mr. Forman, Ms. Stills told Plaintiff that she did not trust him at all.

45.     Ms. Stills stated that she had family members that were "gangsters" and "good ol' boys," implying that she had the ability to retaliate against Plaintiff.

46.     After Plaintiff's report of unfair treatment, Plaintiff's work requirements increased. Initially Plaintiff did not work any weekends, but later he was forced to work two weekends a month.

47.     Ms. Stills expressed her dislike for a few African American vendors. She often created barriers for Plaintiff's choice in talent who were also African Americans. She

intentionally gave Plaintiff wrong codes for the management software and then later accused Plaintiff of "making too many mistakes."

48.    Ms. Stills continued to sabotage Plaintiff's employment to make him appear incompetent for his duties by not providing proper training and giving him the wrong codes.

49.    Ms. Stills nitpicked Plaintiff's contracts for one of the African American talents requiring him to revise the contract at least five times without her assistance. Ms. Stills' actions dissuaded the talent from proceeding with the contract causing Plaintiff to lose the talent.

50.    Ms. Stills was disrespectful to African American patrons in which she stated, "I can't stand those people," referring to a few African Americans that were in the office.

51.    During the Juneteenth holiday, an African American holiday, Ms. Stills refused to timely approve African American contracts. She waited until the last minute which caused the artists and vendors to be paid untimely. Ms. Stills actions caused Plaintiff to appear unprofessional and incompetent to the talent. On other occasions, Plaintiff was timely for non-African American artists and vendors during the Fourth of July holiday.

52.    During the Fourth of July event, Plaintiff was forced to put on a full production by himself although such duties required multiple employees. Plaintiff requested Ms. Stills' assistance, but she refused to assist him. When Plaintiff's husband attempted to volunteer, Ms. Stills told Plaintiff that his husband cannot assist him. Plaintiff was forced to work from 11am to 1am.

53.    During the same Fourth of July weekend in 2023, Plaintiff attempted to take time off of work using compensatory time from working over 13 hours in one day. Ms. Stills declined Plaintiff's request.

54. The director, Brian Forman, implemented a new policy that employees can no longer use compensatory time. However, the same polices was not applied to Ms. Stills or any other non-African American employees.

55. On or about June 13, 2023, Mr. Wright-Ahern filed a grievance with Human Resources against Ms. Stills due to her discriminatory practices against him. Plaintiff was temporarily placed at the Performing Arts building. When Plaintiff requested to remain at the Performing Arts building, Mr. Forman denied his request.

56. Thereafter, on or about July 13, 2023, Plaintiff witnessed a document from Ms. Stills to Human Resources and Mr. Forman attempting to demote him from his position as a Parks & Recreation Coordinator.

57. On or about August 9, 2023, Plaintiff informed Ms. Stills that he did not like the way she treated him. Plaintiff continued to tell Ms. Stills that he needs to be respected, in which she replied that "respect is not given, it is earned." She repeatedly yelled at Plaintiff to get out of her office.

58. On August 10, 2023, Mr. Forman told Plaintiff that he heard that he was being disrespectful to Ms. Stills. Thereafter, Mr. Forman placed Plaintiff on administrative leave and told him to clean out his office. Mr. Forman attempted to force Plaintiff to attend counseling through EAP but did not address Ms. Stills' actions.

59. On August 29, 2023, Mr. Forman called Plaintiff into the office to terminate his position. This termination was improper in all regards.

60. Plaintiff's termination was wrongful and retaliatory. Defendant City of Clermont failed to reprimand Ms. Stills, subjected Plaintiff to race-based and sexual orientation-based discrimination, cultivated a hostile work environment, and retaliated against Plaintiff.

61.    Plaintiff's race and sexual orientation was the motivating factor in Defendants' decision for the termination of Plaintiff.

62.    Plaintiff has retained the undersigned counsel in order that his rights and interests may be protected and thus has become obligated to pay the undersigned a reasonable attorney fee.

<u>COUNT I</u>
**Race-based Discrimination in Violation of the FCRA**

63.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-62 of this complaint as if set out in full herein.

64.    At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act (FCRA) of 1992 Florida Statues§ 760.10 which in its relevant section states it is an unlawful employment practice for an employer to discriminate or discharge or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race.

65.    The applicable statute, FCRA, prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions and privileges of one's employment, based upon race considerations or reasons.

66.    The Plaintiff is an African American and he possessed the requisite qualifications and skills to perform his position with Defendant.

67.    The Plaintiff was subjected to disparate treatment in the workplace, in that similarly situated, non-African American employees were allowed better work opportunities by not being subjected to termination and receiving better benefits from Defendant.

68.    The Plaintiff was terminated as a result of his race and the reasons given by Defendant, if any, for his termination are mere pretext for illegal discrimination.

69.    As a direct and proximate result of the Defendant's unlawful acts, Plaintiff has suffered great and irreparable economic harm and other associated losses such as emotional distress, humiliation, embarrassment, and economic losses. Moreover, as a further result of the Defendant unlawful race based discriminatory conduct, the Plaintiff has been compelled to file this action and he has incurred the costs of litigation.

70.    Defendant violated the Florida Civil Rights Act of 1992 (FCRA) by discriminating against Plaintiff because of his race in the terms, conditions, and privileges of employment.

71.    The Defendant's actions were malicious and a reckless indifference to the Plaintiff's rights pursuant to Florida Statute§ 760, protecting a person from discrimination because of his race.

72.    The aforementioned actions of Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

**COUNT II**
**Sexual Orientation-Base Discrimination in Violation of the FCRA**

73.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-72 of this complaint as if set out in full herein.

74.    At all times material hereto, Defendant failed to comply with the Florida Civil Rights Act (FCRA) of 1992 Florida Statues§ 760.10 which in its relevant section states it is an unlawful employment practice for an employer to discriminate or discharge or otherwise

to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's sexual orientation.

75.     The applicable statute, FCRA, prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions and privileges of one's employment, based upon sexual orientation considerations or reasons.

76.     The Plaintiff is a gay male and he possessed the requisite qualifications and skills to perform his position with Defendant.

77.     The Plaintiff was subjected to disparate treatment in the workplace, in that similarly situated, heterosexual employees were allowed better work opportunities by not being subjected to termination and receiving better benefits from Defendant.

78.     The Plaintiff was terminated as a result of his sexual orientation and the reasons given by Defendant, if any, for his termination are mere pretext for illegal discrimination.

79.     As a direct and proximate result of the Defendant's unlawful acts, Plaintiff has suffered great and irreparable economic harm and other associated losses such as emotional distress, humiliation, embarrassment, and economic losses. Moreover, as a further result of the Defendant unlawful sexual orientation based discriminatory conduct, the Plaintiff has been compelled to file this action and he has incurred the costs of litigation.

80.     Defendant violated the Florida Civil Rights Act of 1992 (FCRA) by discriminating against Plaintiff because of his sexual orientation in the terms, conditions, and privileges of employment.

81.     The Defendant's actions were malicious and a reckless indifference to the Plaintiff's rights pursuant to Florida Statute§ 760, protecting a person from discrimination because of his sexual orientation.

82.     The aforementioned actions of Defendant were done wantonly, willfully, maliciously, and with reckless disregard of the consequences of such actions.

## COUNT III
### Hostile Work Environment in violation of the FCRA

83.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-82 of this complaint as if set out in full herein.

84.     Plaintiff is a member of a protected class under the FCRA.

85.     As part of its protections, the FCRA protects the rights of employees to work in a safe workplace free from harassment or abuse.

86.     The conduct to which Plaintiff was subjected to, as outlined above, was severe, pervasive, humiliating, and unreasonably interfered with Plaintiff's work performance in violation of the FCRA.

87.     The harassing conduct Plaintiff was subjected to was perpetrated against him as a result of him being an African American gay male.

88.     The harassment Plaintiff was subjected to rose to a level that would dissuade a reasonable worker from making or supporting a charge of discrimination.

89.     Defendant's alleged bases for the adverse conduct against Plaintiff are pretextual and asserted only to cover up the harassing, discriminatory, and retaliatory nature of their conduct.

90.     As a result of the hostile work environment to which Plaintiff was subjected and the adverse employment actions suffered by Plaintiff related thereto, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages.

## <u>COUNT IV</u>
## Retaliation in Violation of the FCRA

91.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-90 of this complaint as if set out in full herein.

92.     Plaintiff is a member of a protected class under the FCRA.

93.     By the conduct described above, Defendant retaliated against Plaintiff for exercising his rights protected under the FCRA.

94.     Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights. Defendant and its supervisory personnel were aware that discrimination on the basis of race and sexual orientation was unlawful but acted in reckless disregard of the law.

95.     As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

96.     The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

97.     The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

98.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

## **COUNT V**
**Race-based Discrimination in Violation of 42 U.S.C. § 2000(e)**

99.    Plaintiff pursuant to Title VII, 42 U.S.C. § 2000 (e), sues Defendant, and re-alleges as set forth herein paragraphs 1-98 of this initial complaint and states:

100.    At all times material hereto, the Employer/Defendant failed to comply with the Civil Rights Act of 1964 [42 U.S.C. § 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin."

101.    The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's race.

102.    Defendant's decision to discriminate against Plaintiff was because of Plaintiff's race.

103.    At all relevant times aforementioned, including the time of discrimination, Defendant was aware that Plaintiff was African American.

104.    At the time of this treatment from employment, the Plaintiff did perform the essential functions assigned to him by Defendant.

105.    The Plaintiff was qualified for the position apart from his apparent race.

106.    The Plaintiff was discriminated against by Defendant because he was African American.

107.    The Defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

108.    The failure of Defendant to adhere to the mandates of the Act was willful and its violations of the provisions of the Act were willful.

109.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's federally protected rights, discriminated against Plaintiff on account of his race in violation of Act with respect to its decision to treat Plaintiff different from other employees.

110.    Plaintiff was fired by Defendant and these actions were directly and proximately caused by the Defendant's unjustified discrimination against Plaintiff because of the fact that he was African American, in violation of the Act.

111.    As a direct and proximate result of the Defendant's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

112.    Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reason for the termination from employment, Plaintiff's race.

113.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights protecting a person from discrimination due to their race. The discrimination on the basis of race constitutes unlawful discrimination.

<u>**COUNT VI**</u>
**Sexual Orientation Discrimination in Violation of 42 U.S.C. § 2000(e)**

114.    Plaintiff pursuant to Title VII, 42 U.S.C. § 2000 (e), sues Defendant, and re-alleges as set forth herein paragraphs 1-113 of this complaint and states:

115.    At all times material hereto, the Employer/Defendant failed to comply with the Civil Rights Act of 1964 [42 U.S.C. § 2000 e-2 (a)], which states, "It shall be an unlawful employment practice for an employer to: (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin."

116.    The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's sexual orientation.

117.    Defendant's decision to discriminate against Plaintiff was because of Plaintiff's sexuality.

118.    At all relevant times aforementioned, including the time of discrimination, Defendant was aware that Plaintiff was gay.

119.    At the time of this treatment from employment, the Plaintiff did perform the essential functions assigned to him by Defendant.

120.    The Plaintiff was qualified for the position apart from his apparent sexual orientation.

121.    The Plaintiff was discriminated against by the Defendant because he was gay.

122.    The Defendant is a sophisticated employer who has actual knowledge of the requirements of Title VII of the Civil Rights Act of 1964, as amended.

123.    The failure of Defendant to adhere to the mandates of the Act was willful and its violations of the provisions of the Act were willful.

124.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's federally protected rights, discriminated against Plaintiff on account of his sexual orientation in violation of Act with respect to its decision to treat Plaintiff different from other employees.

125.    Plaintiff was fired by Defendant and these actions were directly and proximately caused by the Defendant's unjustified discrimination against Plaintiff because of the fact that he was gay, in violation of the Act.

126.    As a direct and proximate result of the Defendant's intentional conduct, Plaintiff suffered serious economic losses as well as mental pain and suffering.

127.    Any alleged nondiscriminatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reason for the termination from employment, Plaintiff's sexual orientation.

128.     Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights protecting a person from discrimination due to their sexual orientation. The discrimination on the basis of sexual orientation constitutes unlawful discrimination.

<u>COUNT VII</u>
**Hostile Work Environment in Violation of 42 U.S.C. § 2000(e)**

129.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-128 of this complaint as if set out in full herein.

130.     Plaintiff is a member of a protected class under Title VII.

131.     As part of its protections, Title VII protects the rights of employees to work in a safe workplace free from harassment or abuse.

132.     The conduct to which Plaintiff was subjected to, as outlined above, was severe, pervasive, humiliating, and unreasonably interfered with Plaintiff's work performance in violation of Title VII.

133.     The harassing conduct Plaintiff was subjected to, was perpetrated against him as a result of being African American and/or gay.

134.     The harassment Plaintiff was subjected to rose to a level that would dissuade a reasonable worker from making or supporting a charge of discrimination.

135.     Defendant's alleged bases for the adverse conduct against Plaintiff are pre-textual and asserted only to cover up the harassing, discriminatory, and retaliatory nature of their conduct.

136.     As a result of the hostile work environment to which Plaintiff was subjected and the adverse employment actions suffered by Plaintiff related thereto, Plaintiff has experienced and will continue to experience significant financial and economic loss in the

form of lost wages and lost benefits. Plaintiff has also experienced and will continue to

experience emotional anguish, pain and suffering and loss of dignity damages.

## COUNT VIII
### Retaliation in Violation of 42 U.S.C. § 2000(e)

137.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-136

of this complaint as if set out in full herein.

138.    Plaintiff is a member of a protected class under Title VII.

139.    By the conduct described above, Defendant retaliated against Plaintiff for

exercising his rights protected under Title VII.

140.    Defendant's conduct complained of herein was willful and in disregard of

Plaintiff's protected rights. Defendant and its supervisory personnel were aware that

discrimination on the basis of sexual orientation was unlawful but acted in reckless disregard

of the law.

141.    As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of

rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress

and damage.

142.    The conduct of Defendant, by and through the conduct of its agents, employees,

and/or representatives, and the Defendant's failure to make prompt remedial action to prevent

continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under

federal law.

143.    The actions of the Defendant and/or its agents were willful, wanton, and

intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected

rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages

pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

144.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A.    Adjudge and decree that Defendant has violated the FCRA and Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Enter a judgment requiring that Defendants pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C.    Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.    Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.    Award any other compensation allowed by law including punitive damages;

F.    Award Plaintiff the costs of this action, together with a reasonable attorneys' fee; and

G.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Respectfully submitted,

**The Law Office of P.A. Johnson, PLLC**

/s/ *Phytiema Johnson*
Phytiema Johnson, Esq.
State Bar No: 24132837
14237 E. Sam Houston Parkway N.
Suite 106
Houston, Texas 77044
Ph: (305)349-3012
Email: pjohnson@pajlawfirm.com
**Attorney for Plaintiff**